IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SALVADOR CHUB COC, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-8177 |
| | : | |
| JAMISON, J.L., *et al.* | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez** **October 30, 2026**

Petitioner Salvador Chub Coc brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS). He argues his current detention violates his right to due process under the Fifth Amendment because Immigration and Customs Enforcement (ICE) officials arrested him without a warrant and he was detained without an individualized custody determination. Additionally, he argues his warrantless arrest violates the INA and the regulations set out in 8 C.F.R. § 236. The Government asserts Mr. Chub Coc is lawfully detained pursuant to 8 U.S.C. § 1226(a) in accordance with the Third Circuit's ruling in *Buele Morocho v. Warden Philadelphia FDC*, 189 F.4th 287 (3d Cir. 2026). Additionally, the Government argues Mr. Chub Coc claims are not cognizable in habeas because he has not exhausted administrative remedies.

Because ICE arrested Mr. Chub Coc without a warrant, the Court will grant his petition. Accordingly, this Court will order Mr. Chub Coc's immediate release.

**BACKGROUND**

Mr. Chub Coc has resided in Elkton, Maryland since December 2020. Pet. ¶ 18, ECF No. 1. Prior to the arrest that led to this petition, he has had no previous interactions with immigration enforcement, and he has no criminal history in the United States or otherwise. *Id.* ¶¶ 18-19.

On October 20, 2026, Mr. Chuc Coc was on his way to work when police stopped his car. *Id*. The officers were conducting a fugitive investigation to locate and arrest another individual at the time. *See* Gov't Ex. A, ECF No. 5-1. The I-213 form completed after the arrest further explains, "[a]t approximately 0700HRS, Officers observed a Hispanic male matching the description of [other individual]." *Id.* The form does not explain how Mr. Chub Coc matched the description, other than identifying him as a "Hispanic male." *Id.* The officers approached Chub Coc's vehicle and determined hat Mr. Chub Coc was a national of Guatemala, and that he was in the United States unlawfully. *Id.* The Officers then arrested Mr. Chub Coc. *Id.*

The Government alleges a handwritten warrant was prepared during this interaction and served on Mr. Chub Coc at the time of his arrest. Gov't Resp. 2, ECF No. 5. Notably, the Government has not produced the warrant, or any information about it, including the time it was issued, who signed it, and whether the officers on scene had authority to do so.[1] ICE then transported Mr. Chub Coc to a field office for processing, where he was served a Notice to Appear. *See* Gov't Ex. B, ECF No. 5-2. He was then served with a Form 1-200 warrant for arrest that "was generated during the processing of his arrest at the ICE office."[2] Gov't Resp. 2; Gov't Ex. C, ECF No. 5-3. Mr. Chub Coc requested a bond hearing, and ICE promptly filed his request with the immigration court. *Id.* A bond hearing is scheduled for November 3, 2026. *Id.*

---

[1] The Government indicates in a footnote that a copy of the handwritten warrant can be obtained and provided "if deemed necessary." Gov't Resp. 2 n. 1. Considering the petition challenges Mr. Chub Coc's initial *warrantless* arrest as a violation of his due process rights, this Court fails to see why the Government believes this handwritten warrant can be glossed over in a footnote. The Court will take the Government's failure to produce the warrant and its decision not to address Mr. Chub Coc's warrant argument in its response brief as a concession that ICE did not have a valid warrant when it arrested Mr. Chub Coc.

[2] It is unclear from the record whether the Form 1-200 Warrant was served after, simultaneously with, or prior to the Notice to Appear. However, because the Notice to Appear was undeniably issued after Mr. Chub Coc was arrested, the timing is not determinative here.

Mr. Chub Coc filed a habeas petition on October 26, 2026, seeking a writ of habeas corpus directing the Government to immediately release him. Pet. 20. He argues his arrest and detention without a warrant or any individualized custody determination violates due process. The Government argues there are no constraints on its discretion to detain a noncitizen pursuant to § 1226(a), so it may arbitrarily stop and detain individuals suspected of being inadmissible or deportable without any individualized determination. Gov't Resp. 3. Further, the Government argues Mr. Chub Coc cannot seek relief in this Court, but instead he must exhaust administrative remedies by seeking relief through an administrative custody redetermination. *Id.* The Government declines to address the remaining arguments raised in the petition.

**LEGAL STANDARD**

A federal district court may grant habeas relief to a petitioner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas is "regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305 (2001). A petitioner seeking habeas relief has the burden to demonstrate that they are being detained in violation of the Constitution or federal law. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941).

Habeas petitioners are normally required to exhaust administrative remedies. *See Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 1996). However, exhaustion may be excused when it would be futile or where "the actions of the agency clearly and unambiguously violate statutory or constitutional rights." *See Lyons v. U.S. Marshals,* 840 F. 2d 202, 205 (3d Cir. 1988). This Court previously held administrative exhaustion was not required where, as here, the petitioner contests

the legality of their initial deprivation of liberty, or where the administrative remedy is not presently available.[3] *Dos Reis*, 2026 WL 1746649 at *3.

The Due Process Clause "applies to all persons within the United States, including [noncitizens]" in removal proceedings. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see also Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including aliens in immigration proceedings who are entitled to due process of law[.]"). In the civil immigration detention context, due process requires procedures reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976). Under *Mathews*, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and

---

[3] The Government acknowledges Petitioner cannot attend his scheduled bond hearing while detained at FDC Philadelphia because that facility does not facilitate virtual hearings for ICE detainees. A remedy that exists only if ICE elects to make it accessible is not an available remedy Petitioner must exhaust. *See Dos Reis*, 2026 WL 1746649 at *3 (citing *Gowen v. Winfield*, 130 F.4th 162, 176 (4th Cir. 2025), in which the court concluded that, "in the context of the PLRA, an administrative remedy is considered unavailable if a prisoner, through no fault of his own, was prevented from availing himself of it." (internal quotation marks omitted)).

Although courts in this district are divided on this issue, several judges in this district have agreed that exhaustion is excused in cases such as this. *See Juarez v. Mullin,* 26-cv-7008, 2026 WL 29819467, at *2 (E.D. Pa. Oct. 5, 2026) (Kenney, J.) (holding "exhaustion 'would be futile' and the actions of ICE 'clearly and unambiguously' violated Petitioner's statutory and constitutional rights" where petitioner was arrested and detained without a warrant); *Sanchez Rosales v. Jamison,* No. 26-cv-73171, 2026 WL 3002650, at *2 (E.D. Pa. Oct. 6, 2026) (Henry, J.) ("[A]dministrative exhaustion is not required where, as here, '[a] later bond hearing would not necessarily cure the alleged constitutional violation that preceded it.'" (citation omitted)); *Dzehtisarou v. Mullin*, No. 26-cv-5060, 2026 WL 2211392, at *2-3 (E.D. Pa. July 31, 2026) (Rufe, J.); *Hernandez Delgadillo v. Blanche*, No. 26-6195, 2026 WL 2569475, at *2-3 (E.D. Pa. Aug. 31, 2026) (Perez, J.); *Perez Angeles v. Mullin*, No. 26-cv-7167, 2026 WL 3041377, at *1 n.1 (E.D. Pa. Sept. 22, 2026) (Kearney, J.); *Torres Guevara v. Warden of Fed. Det. Ctr. Phila.*, No. 26-cv-7077, 2026 WL 2838542, at *3-4 (E.D. Pa. Sept. 22, 2026) (Savage, J.).

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

**DISCUSSION**

This Court and others in this District have already resolved the issues in this case against the Government: (1) whether a district-court habeas petition is the appropriate avenue for redress,[4] (2) whether § 1226(a) and its accompanying regulations require a warrant,[5] and (3) whether § 1226(a) requires ICE to conduct an individualized determination of flight risk or dangerousness. The Government acknowledges courts in this district, including this Court, have rejected its interpretation, though it continues to press that position here. Gov't Resp. 2.

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States,* 567 U.S. 387, 408 (2012). Under normal circumstances, when an alien is "suspected of being removable," a Notice to Appear is issued. *Id.* This does not authorize arrest, but under the federal statutory structure the Attorney General has discretion to issue a warrant for arrest after the Notice to Appear is issued and detain the alien "pending a decision on whether the alien is to be removed from the United States." *Id.* (quoting 8 U.S.C. § 1226(a)). Section 1357(a)(2) provides a limited exception for warrantless arrests if ICE can demonstrate

---

4 As noted, this Court has consistently found exhaustion is excused in cases like this one and continues to do so now. *See Dos Reis*, 2026 WL 1746649 at *3; *Perez Contreras v. Rife*, No. 26-cv-7358, 2026 WL 2908610, at *1 (E.D. Pa. Sept. 28, 2026); *Laphachi v. Jamison*, No. 26-cv-7211, 2026 WL 2959610, at *3 (E.D. Pa. Oct. 1, 2026); *Hernandez v. Jamison,* No. 26-cv-7606, 2026 WL 3034460, at *2 (E.D. Pa. Oct. 9, 2026); *Maldonado Nandi v. Jamison,* No. 26-cv-7633, 2026 WL 3151303, at *2 (E.D. Pa. Oct. 21, 2026); *Michilashvili v. Jamison*, No. 26-cv-7686, 2026 WL 3182160, at *3 (E.D. Pa. Oct. 23, 2026).

5 The Government declines to address this issue in its response brief. *See* Gov't Resp. 4 n.3. Because it is clear from the Government's response and exhibits that ICE did not have a valid warrant to arrest Mr. Chub Coc, the Court will address this issue without a response from the Government.

"probable cause."[6] *Tabora-Brizuela v. Mullin*, No. 26-7010, 2026 WL 2908095, at *2 (E.D. Pa. Sept. 28, 2026) (quoting *Lee v. Immigr. & Naturalization Serv.*, 590 F.2d 497, 500 (3d Cir. 1979)); *see also* 8 U.S.C. § 1357(a)(2). However, "if the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona,* 567 U.S. at 408.

The Government argues Mr. Chub Coc is lawfully detained under 8 U.S.C. § 1226(a), which conditions the discretionary ability to detain *only* "on the noncitizen being charged . . . as removable."[7] Gov't Resp. 3. This Court has previously rejected the Government's extraordinary assertion that detention based on an alien's status alone constitutes an act of discretion. *See Dos Reis*, 2026 WL 1746649, at *4 ("Reliance on status alone amounts to a per se determination that comports not with 1226(a), but with [the Government's] desired policy of detention." (internal

---

[6] Although neither the petitioner nor the Government raises Section 1357(a)(2) in their briefs, it is apparent ICE agents did not have probable cause to arrest Mr. Chub Coc without a warrant. ICE officers admittedly were looking for a different individual when they encountered Mr. Chub Coc. Gov't Resp. 2. As another court in this district recently observed, the Court "is starting to see a troubling pattern of individuals being 'mistakenly' identified as targets by ICE and investigated without reasonable suspicion merely for being in proximity to other unnamed, ambiguous targets . . . Whether ICE officers intended to do so or not, their actions here are indicative of racial profiling." *Lopez-Lopez v. Jamison*, 26-cv-7618, 2026 WL 3094744, at *6 (E.D. Pa. Oct. 16, 2026); *see also Almonte v. Genalo*, No. 26-cv-7556, 2026 WL 2983704, at *8 n. 7 (E.D.N.Y. Oct. 5 2026) (collecting cases). ICE had no information to suggest Mr. Chub Coc would be "likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). "Moreover, the fact that ICE officers issued a Form I-200 Warrant for Petitioner's arrest at the scene further confirms that they did not intend to proceed with a warrantless arrest pursuant to Section 1357(a)(2)." *Lopez-Lopez*, 2026 WL 3094744, at *6.

[7] This Court shares the concern expressed by other courts in this district about the Government's position on this issue, that "agents of the Executive Branch 'can just go around and talk to anybody they want to talk to and then determine they are illegal and just arrest them' without any statutory or constitutional authority whatsoever. . . . Not only is this position legally incorrect, *see United States v. Brignoni-Ponce*, 422 U.S. 873 (1975), when taken to its logical conclusion, it claims—without a shred of support—that we have 'transformed our country into a police state and abandoned one of the fundamental tenets of our free society,' *Capua v. City of Plainfield*, 643 F. Supp. 1507 (D.N.J. 1986)." *Torres v. Mullin,* No. 26-cv-7439, 2026 WL 3084994, at *2 n. 2 (E.D. Pa. Oct. 15, 2026).

quotation marks and citation omitted)). Even so, the Government's own position reveals that the ability to detain is conditioned on the alien being *charged*, which does not occur until a Notice to Appear is issued. *See Lopez-Lopez*, 2026 WL 3094744, at *3 (explaining the Notice to Appear is a "case-initiating document" which commences the legal proceeding against the alien); *see also Loaeza v. Bausch*, No. 26-cv-00945, 2026 WL 2150155, at *1 (W.D.N.Y. July 27, 2026) ("The Notice to Appear ('NTA') is the immigration version of a charging instrument and begins the removal process." (internal quotation marks and citation omitted)). "In other words, without a valid NTA in place, removal proceedings are not pending, and Respondents have no authority to make an arrest or effectuate detention pursuant to §1226(a)." *Loaeza*, 2026 WL 2150155, at *1.

Because the Government has detained Mr. Chub Coc under Section 1226(a), he is entitled to the "process due under that statute, . . . which in this case required a warrant before arrest." *Tabora-Brizuela*, 2026 WL 2908095, at *3; *see also Hernandez v. Blanche*, No. 26-6195, 2026 WL 2569475, at *3 (E.D. Pa. Aug. 31, 2026) (collecting cases); *N.S. v. Dixon*, 141 F.4th 279, 282-83 (D.C. Cir. 2025); *Sergio P. v. Bondi*, No. 26-1538, 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026); *Juarez v. Mullin*, No. 26-cv-7008, 2026 WL 2981947, at *2 (E.D. Pa. Oct. 5, 2026). Warrants issued *before* a Notice to Appear is issued are invalid, and therefore "it is unlawful for ICE officers to arrest and detain a noncitizen on a Form I-200 warrant and *subsequently* generate an NTA." *Lopez-Lopez*, 2026 WL 3094744, at *4.

The *Matthews* factors weigh in Mr. Chub Coc's favor. First, Mr. Chub Coc has a clear liberty interest in being free from detention. Second, there is a significant "risk of erroneous deprivation" when ICE detains an individual without a warrant as is required by Section 1226(a) or without the probable cause necessary to support a warrantless arrest under Section 1357(a)(2). *See Tabora-Brizuela*, 2026 WL 2908095, at *4; *see also Torres Guevara v. Warden of Fed. Det.*

*Ctr. Phila.,* No. 26-7077, 2026 WL 2838542, at *4 (E.D. Pa. Sept. 22, 2026). As to the third *Matthews* factor, the Government has an interest in enforcing immigration laws. However, ICE officers must abide by the statute and regulations when they are enforcing immigration laws, and requiring ICE to do so is not a burden on the Government. Therefore, Mr. Chub Coc's detention pursuant to a warrantless arrest violates the INA, which is "grounds for habeas relief." *Tabora-Brizuela,* 2026 WL 2908095, at *3.

Lastly, in *Dos Reis,* this Court held that § 1226(a) provides discretion to detain or release a noncitizen while their removal decision is pending, but the agency must exercise that discretion through an individualized custody determination. 2026 WL 1746649, at *4. This Court found the first and second *Matthews* factors weighed in favor of the petitioner because freedom from physical confinement "lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690, and the risk of erroneous deprivation is high when ICE detains a person without identifying why *that* person presents a danger or flight risk. The last *Matthews* factor, the Government's legitimate interest in ensuring appearance at removal proceedings or protecting the community, does not outweigh the petitioner's liberty interest, especially where the Government fails to articulate why its interest in detention applies to the individual petitioner. *Dos Reis,* 2026 WL 1746649, at *5.

While the Third Circuit has not ruled on this specific issue, its recent opinion in *Buele Morocho* only bolsters this Court's previous determination that detention without an individualized determination violates due process. *See* 189 F.4th at 306-07 (holding (1) "mandatory detention implicates Petitioners' 'constitutionally protected interest in avoiding physical restraint'"; (2) "the absence of an opportunity for a neutral decisionmaker to assess whether Petitioners are dangerous or flight risks presents a high risk of erroneously depriving

Petitioners of their liberty interest"; and (3) "the Government's legitimate interest in preventing the release of dangerous noncitizens and those who might fail to appear at future hearings does not outweigh the other two factors here" (internal citations omitted)); *see also Regalado-Nauta v. Jamison*, No. 26-cv-6834, 2026 WL 2740528, at *3 (E.D. Pa. Sept. 16, 2026).

The record is unclear as to whether an individualized finding was made to detain Mr. Chub Coc. The Government has produced a Form I-213 which states prior to Mr. Chub Coc's arrest "a secondary brief field interview was conducted to determine if any unknown humanitarian issues existed that would delay or dissuade ICE from taking Chub Coc into custody. Chub Coc presented no compelling issues that would prevent his arrest." Gov't Ex. A, ECF No. 5-1. It is not apparent from the Form nor from the Government's Response what "unknown humanitarian issues" were considered before detaining Mr. Chub Coc. This Court has previously held the individualized custody determination required under § 1226(a) "requires an individualized determination as to . . . whether the noncitizen is a danger to property or persons and is likely to appear for any future proceeding." *Dos Reis*, 2026 WL 1746649, at *4 (internal quotation marks and citation omitted). "Humanitarian issues" may encompass this, but without further information this Court cannot say for certain ICE made the required findings. Additionally, the remaining forms submitted reflect that his detention is based solely on his status. Gov't Ex. B, C, D, ECF No. 5-2, 5-3, 5-4. As the Court explained in *Dos Reis*, "[t]hat is not an individualized custody determination." 2026 WL 1746649 at *4. "It is a categorical detention disposition." *Id.* Because the Court can decide the Petition on the warrant issue alone, it declines to determine whether Mr. Chub Coc received an individualized custody determination.

**CONCLUSION**

Accordingly, because exhaustion is excused and because ICE did not have a valid warrant to detain Mr. Chub Coc in violation of his due process rights, the Court will grant Mr. Chub Coc's Petition for a Writ of Habeas Corpus. An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.